IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNEST SMITH,

                Plaintiff,

                Civil No. 07-1362-ST

        v.                FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                Defendant.

STEWART, Magistrate Judge:

    Plaintiff, Ernest Smith ("Smith"), seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 USC § 405(g). The Commissioner's decision

1 - FINDINGS AND RECOMMENDATION

should be reversed and remanded for the immediate calculation and award of benefits for the reasons that follow.

## BACKGROUND

Born in 1965, Smith completed high school and one year of college. Tr. 69, 84.[1] Between 1987 and November 2000 Smith worked as an equipment operator, welder, and crane operator in an aluminum plant. Tr. 87.

Smith alleges disability since November 14, 2000, due to deep vein thrombosis ("DVT") in both legs. Tr. 69, 78. Smith's applications were denied initially and upon reconsideration. Tr. 27-31, 34-36, 387-95. A hearing was held before an Administrative Law Judge ("ALJ") on May 24, 2005. Tr. 405-43. On March 14, 2006, the ALJ issued a decision finding that Smith is not disabled. Tr. 17-24. The Appeals Council accepted additional evidence but denied Smith's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 6-9.

## MEDICAL BACKGROUND

Smith developed DVT in his left leg in January 1994. Tr. 204, 206. He was subsequently hospitalized and the thrombosis cleared in April 1994. Tr. 202-03.

In March 1999, Smith strained his right calf and again developed DVT, this time throughout his right leg. Tr. 198-200. Smith's right calf remained swollen in March 1999 (Tr. 270), and clot clearing was incomplete in July 1999. Tr. 197, 296. In August 1999, vascular surgeon Paul O. Moon, M.D, found a moderate degree of post-phlebetic syndrome.[2] Tr.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 8, 2008 (docket #13).

[2] Post-phlebetic syndrome, or chronic venous insufficiency, occurs following DVT when the venous obstruction decreases blood flow and associated pressure, causing extremity edema and inflamation. *The Merck Manuals Online Medical Library*, available at http://www.merck.com/mmpe/sec07/ch081/ch081c.html (last visited September 4, 2008).

2 - FINDINGS AND RECOMMENDATION

156. Physicians continued to assess DVT and post-phlebetic syndrome in November 1999. Tr. 294. During this episode physicians expressed concern that Smith twice developed DVT at age 34 and suggested diagnostic tests to evaluate a possible hypercoagulative state.[3] Tr. 198.

Throughout 2000 Smith's right leg remained swollen. Tr. 267-68, 292. In October 2000, Smith's left leg appeared normal but he continued to manifest DVT in his right leg. Tr. 218. Also in October 2000, vascular surgeon John M. Porter, M.D., assessed "hypercoagulative disorder." Tr. 173-74, 177-80.

In February and March 2001, Smith was hospitalized for a third DVT episode, this time in his left leg. Tr. 187-93. The treating internist, Thomas H. Hodge, M.D., concluded that Smith was in a "probable hypercoagulative state" pending further testing. Tr. 363. Dr. Hodge stated that Smith would "probably" require lifelong Coumadin treatment. Tr. 364. Treatment continued throughout 2001 (Tr. 228-30, 254-56, 261-62), and March 2001 imaging studies showed "resolving" DVT in Smith's left leg and "old" DVT in his right leg. Tr. 230.

Throughout 2002 specialists assessed chronic DVT, noting anatomical changes in both of Smith's legs. Tr. 218, 247. In June 2002, vascular surgeons diagnosed "chronic bilateral venous insufficiency" and treating physician, Robert J. Alaimo Jr., D.O., wrote a letter that Smith "should be retrained in another profession . . . that does not allow [him] to stress his lower extremity and possibly aggravate his [DVT]." Tr. 220-21 251.

Physicians continued to assess chronic DVT throughout 2003, and Smith's right leg remained swollen during this period. Tr. 238-43. By August 2003, imaging studies showed only

---

[3] A hypercoagulative state is a condition that may lead to the abnormal development of blood clots. *Medline Plus*, National Institute of Health, available at http://www.nlm.nih.gov/medlineplus/ency/article/001120.htm (last visited September 8, 2008).

a small non-occlusive thrombus in Smith's right leg and no abnormal findings in his left leg. Tr. 309.

Between January 2004 and July 2005 Dr. Alaimo continued to assess chronic DVT with associated edema. Tr. 366-72. In August 2005, Dr. Alaimo responded to questions from Smith's attorney by recommending various workplace limitations. Tr. 373-75. The medical record closes in September 2005.

## DISABILITY ANALYSIS

In construing an initial disability determination under Titles II and XVI, the Commissioner engages in a sequential process encompassing between one and five steps. 20 CFR §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i); 416.920(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, then he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a

regular and continuing basis, despite limitations imposed by his impairments. 20 CFR §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566; 416.966.

## THE ALJ'S FINDINGS

At step two, the ALJ found Smith's DVT severe. Tr. 19. At step three, the ALJ found that this impairment did not meet or equal a listing and that Smith has the RFC:

> to lift and carry twenty pounds occasionally and ten pounds frequently. Furthermore, he can sit, stand and walk for up to six hours and can stand or walk for up to two hours during an eight-hour day, provided he is given the opportunity to elevate his left leg above his heart for fifteen minutes every two hours. The claimant is also limited to only occasional climbing, kneeling, crouching and crawling. Finally, he should avoid even moderate exposure to hazardous conditions.

Tr. 20.

Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Smith is unable to perform his past relevant work but may perform unskilled sedentary work

existing in the national economy, such as an electronic parts assembler, telemarketer, or information clerk. Tr. 22-23. The ALJ therefore found Smith not disabled at any time through the date of his decision. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id*; *see also Batson*, 359 F3d at 1193.

## FINDINGS

Smith contends the ALJ improperly assessed his alleged depression at step two in the sequential proceedings, improperly assessed the opinion of a treating physician, and erroneously evaluated his credibility.

///

### I. Step Two Evaluation

At step two in the sequential analysis, the ALJ determines if the claimant has a "severe" impairment. 20 CFR §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment is "severe" if it

"significantly limits your ability to do basic work activities." 20 CFR §§ 404.1520(c); 416.920(c); *see also* 20 CFR §§ 404.1521; 416.921. Such an impairment must last, or be expected to last, 12 months. 20 CFR §§ 404.1509; 416.909.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 CFR §§ 404.1545(a)(2); 416.945(a)(2). Because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of the ALJ's alleged error in reviewing the subsequent findings at steps four and five. *See Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis).

## II.    Smith's Credibility

Smith testified that he experienced pain, swelling, discomfort, and leg cramps in his right leg which causes more problems than the left leg. Tr. 412. When his leg is elevated, his pain is "about 1" on a scale of one to ten, but that his average pain level is "a 3 or 4." Tr. 415. When he is seated and his leg is in a "down" position, his pain "would be a 5 or 6," but increases to "7, 8" when walking or standing. Tr. 416. Smith also stated that he experiences leg cramps lasting four to five minutes approximately three times per week, and that when this occurs his pain is "way past 10." *Id.* Smith indicated that walking or sitting "too long" may cause such cramping. Tr. 417.

Smith testified that a compression or support stocking helps the swelling in his leg, but that standing, walking, and sitting with his leg unelevated exacerbates the swelling. Tr. 414. Finally, Smith testified regarding accommodations his previous employer made for his impairment. Tr. 410.

7 - FINDINGS AND RECOMMENDATION

The ALJ's credibility finding cited Smith's medical record and his daily activities. Tr. 21.  Smith contends the ALJ's analysis was erroneous.

### A.   Legal Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," the ALJ must provide "specific, clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,* 504 F3d 1036 (citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F3d at 883.

///

### B.   Analysis

#### 1.   Medical Record

The ALJ first found that Smith's "allegations as to the extent of his symptoms are only partially supported by the medical record," citing the testimony of the medical expert, Frank

8 - FINDINGS AND RECOMMENDATION

McBarron, M.D. Tr. 21. According to the ALJ, Dr. McBarron testified that Smith "was capable of performing at least sedentary work." *Id.* Dr. McBarron did testify that he thought Smith "could do sedentary work," but added that Smith "would have to at least 15 minutes every two hours have his left leg elevated above his right atrium" with the brace on. Tr. 436-37. This additional testimony regarding Smith's need to elevate his leg (whether right or left) is consistent with Smith's testimony of reduced pain and swelling with an elevated leg. Furthermore, the ALJ failed to consider that the DDS physicians found Smith's symptom testimony consistent with the medical record. Tr. 329, 350. For these reasons the ALJ's finding that the medical record contradicts Smith's testimony is not based upon the record and should not be sustained.

### 2. Activities of Daily Living

With respect to Smith's daily activities, the ALJ noted that "allegedly limited daily activities cannot be objectively verified with any certainty" and that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition." Tr. 21. The ALJ must give sufficiently specific reasons for rejecting a claimant's testimony. *Lingenfelter,* 504 F3d 1036*; Orteza*, 50 F3d at 750. This court cannot reconcile the ALJ's general comments with this standard.

The ALJ subsequently cited Smith's testimony that he "continued to work out at a fitness club, quitting only because he was unable to afford the fees" and "within the last two years he continued to hunt and go fishing, albeit on a limited basis." Tr. 21. The ALJ's summary of Smith's testimony does not accurately reflect the record. It fails to note Smith's testimony that he could no longer navigate terrain while hunting or fishing and last hunted from a vehicle. Tr. 421-22. Additionally Smith testified that at the fitness club, he worked only his upper body

9 - FINDINGS AND RECOMMENDATION

and was unable to swim because his leg would cramp. Tr. 422. Furthermore, occasional or sporadic exercise does not impugn a claimant's credibility. *Reddick*, 157 F3d at 722. As a result, the ALJ's findings in regard are not based upon the record and must be rejected.

### 3. Smith's Date Last Worked

Finally, the ALJ stated that Smith "continued to work for the same employer with accommodations until he stopped voluntarily pursuant to a business-related layoff." Tr. 21. As for his accommodations, Smith testified that his former employer "gave me my own car to drive. I could take a break whenever I needed to. I was able to elevate my leg. I basically had no structured job every day. I just kind of floated around. It was a lot different than my prior job." Tr. 410.

Generally, the Commissioner will not consider work done under special conditions to constitute substantial gainful activity. 20 CFR §§ 404.1573(c); 416.973(b). The Commissioner's regulations specifically instruct that "[i]f you are doing work that involves minimal duties that make little or no demands on you and that you are of little or no use to an employer . . . this does not show that you are working at the substantial gainful activity level." 20 CFR §§ 404.1573(b); 416.973(b). However, "the work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." 20 CFR §§ 404.1573(c); 416.973(b). This standard may not apply when "you were provided with special equipment or were assigned to work especially suited to your impairment," when "you were permitted to work at a lower standard of productivity or efficiency," or when "you were given the opportunity to work despite your impairment because of . . . past

associations with your employer, or your employer's concern for your welfare." 20 CFR §§ 404.1573(c)(3), (5), (6); 416.973(c)(3), (5), (6).

Whether Smith performed substantial gainful activity is not relevant to this step of the sequential analysis. However, this standard instructs the ALJ to consider the effects of workplace accommodations in evaluating a claimant's workplace activity. The ALJ's inference that Smith's efforts to perform work with accommodations deems him not credible is inconsistent with the Commissioner's own standard and should not be sustained.

### III. Medical Source Statements

In August 2005 Dr. Alaimo stated that Smith experiences swelling and pain in his right calf and must periodically elevate his leg "more than normal scheduled breaks" in the course of an eight-hour shift to alleviate pain. Tr. 373. Dr. Alaimo opined that Smith could stand less than two hours in an eight-hour shift, could stand or walk one hour and forty-five minutes in an eight-hour shift, could sit approximately four hours during an eight-hour shift, and must periodically alternate sitting and standing. Tr. 374. Dr. ALaimo expected Smith would miss more than two work days per month and experienced "marked" impairment in his concentration, persistence, and pace due to his medications. Tr. 375.

Smith specifically challenges the ALJ's evaluation of these work restrictions.

///

///

#### A. Legal Standard

The ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's

11 - FINDINGS AND RECOMMENDATION

opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005). The record contains an RFC evaluation by a DDS medical consultant dated December 29, 2003 (Tr. 325-30) which controverts Dr. Alaimo's opinion.

To the extent that it addresses Smith's ability to work, Dr. Alaimo's rejected opinion is a vocational assessment, not a medical opinion. The opinion of the treating physician is not necessarily conclusive to the ultimate issue of disability since such assessments are reserved for the Commissioner. 20 CFR §§ 404.1527(e)(1); 416.927(e)(1). Thus, the ALJ was not bound to accept this portion of Dr. Alaimo's opinion. *Reddick*, 157 F3d at 725. However, the ALJ was required to give specific and legitimate reasons for rejecting the limitations suggested by Dr. Alaimo. *Id*; *Bayliss*, 427 F3d at 1216.

### B.    Analysis

#### 1.    "Check the Box" Forms

As his first reason for rejecting Dr. Alaimo's opinion, the ALJ found that "attorney-created, goal directed, check-the-box, fill-in-the-blank" forms may be summarily rejected, citing *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989) and *Young v. Heckler*, 803 F2d 963, 968 (9th Cir 1986). Tr. 22.

The ALJ may reject a physician's brief disability statement when it "contradict[s] all the earlier medical reports," including reports by the same physician. *Young*, 803 F2d at 968. The ALJ may also reject physician opinions that are "brief, conclusory and inadequately supported by clinical findings." *Bayliss*, 427 F3d at 1216, citing *Tonapetyan v. Halter*, 242 F3d 1144, 1149

12 - FINDINGS AND RECOMMENDATION

(9th Cir 2001).  However, no authority establishes that the ALJ may reject a physician's opinion stated on a disability report form simply because the opinion was presented upon a form rather than in a longer narrative.

Dr. Alaimo's opinion is supported by his own voluminous notes, which show that he treated Smith consistently between at least January 1994 and August 2005 when the record closes.  Tr. 204, 373 (additional citations omitted).  During this period Dr. Alaimo documented the longitudinal nature of Smith's condition as described above and noted clinical examination results and findings.  *Id.*  For this reason, the ALJ's finding that Dr. Alaimo's August 2005 opinion is unsupported is not based upon the record and should not be sustained.

### 2. Source of Medical Opinion

Second, the ALJ "further emphasized" that Dr. Alaimo's opinion "was provided by the claimant's representative solely to generate evidence for the current appeal . . . and the doctor was presumably paid to complete the report."  Tr. 22.  If this presumption were a legitimate basis to reject physicians' opinions, claimants would be left in the untenable position of being required to prove their entitlement to benefits, but precluded from relying on information provided by their treating physicians at the request of their representatives.  This is simply not a "legitimate basis" for rejecting a medical opinion.  *Nguyen v. Chater*, 100 F3d 1462, 1464 (9th Cir 1996).  This reasoning should not be sustained.

### 3. Change in Claimant's Condition

Third, the ALJ noted that "there is no evidence of a significant deterioration in the claimant's medical condition with respect to [his DVT] since June 2002, when Dr. Alaimo recommended the claimant undergo retraining into a lighter job."  Tr. 22.  The ALJ subsequently

13 - FINDINGS AND RECOMMENDATION

inferred that this distinction created a contradiction between Dr. Alaimo's June 2002 and August 2005 opinions. *Id.*

The record shows that Smith's condition was increasingly characterized as "chronic" between 2002 and 2005 when the record closes. Medical expert Dr. McBarron additionally testified that Smith's condition "evolved" to near listing-level at the time of his hearing (Tr. 433) and that concurrent indications of a "hypercoaguable state" would establish that Smith met the relevant listing. Tr. 434-35.

The ALJ may reject a physician's truncated opinion where contradicting records show no change in the claimant's condition. *Young*, 803 F2d at 968. This is not the case here. The ALJ's inference that Smith's condition did not change between June 2002 and August 2005, as a rationale to reject Dr. Alaimo's opinion, is not based upon the record and should not be sustained.

Thus, each of the ALJ's reasons for rejecting Dr. Alaimo's August 2005 suggested work limitations fails.

## IV.    Remand

The ALJ erroneously evaluated Smith's testimony and Dr. Alaimo's opinion. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not

sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F3d at 1178, quoting *Smolen,* 80 F3d at 1292. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003).

Correction of the ALJ's errors resolves all issues and thus compels a determination of disability. The ALJ's assessment of Smith's testimony and Dr. Alaimo's work restrictions is not based upon the record. If credited, the limitations described by both establish disability. Specifically, the vocational expert's testimony establishes that Dr. Alaimo's August 2005 work restrictions would preclude Smith from performing work existing in the national economy at step five in the sequential proceedings. Tr. 441.

Sufficient findings establish disability at step five of the sequential proceedings if the improperly rejected evidence is credited as true. Therefore, exercising its discretion, this court recommends a reversal and remand for an award of benefits. Because the improperly rejected evidence establishes disability, this court need not determine the effect of the ALJ's alleged failure to find Smith's depression "severe" at step two in the sequential proceedings.

**RECOMMENDATION**

For the reasons set forth above, the Commissioner's decision that Smith did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence. Thus, the ALJ's determination that Smith did not suffer from a disability should be reversed and remanded pursuant to sentence four of 42 USC § 405(g) for calculation and award of benefits.

**SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due by October 10, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 24th day of September, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge